CONTINENTAL OIL COMPANY, Appellant,

v.

William DOORNBOS et al., Appellees.

No. 6659.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 5, 1964.

Rehearing Denied Jan. 20, 1965.

------◆------

Orgain, Bell & Tucker, Beaumont, Thos. D. Montgomery, Fort Worth, for appellant.

Williams, Lee & Lee, Houston, W. O. Bowers, Jr., Beaumont, Harry L. Logan, Jr., Fort Worth, for appellees.

STEPHENSON, Justice.

This action was brought in trespass to try title and for reformation of a deed because of mutual mistake. Trial was by jury and judgment was rendered for plaintiffs based upon the findings of the jury.

April 23, 1945, Continental Oil Company, hereinafter called defendant, conveyed by deed to C. Doornbos approximately 1800 acres located in Jefferson County, Texas. Such deed reserved and excepted four royalty interests as follows:

1. A reservation of ⅟₃₂nd of production by San Antonio Loan & Trust Company in its deed to Continental dated January 25, 1942.

2. A royalty of ⅟₃₂nd of production conveyed by Continental to Butcher-Arthur Company by deed dated January 26, 1943.

3. A royalty of ⅟₃₂nd of production reserved in favor of Continental in its deed to C. Doornbos dated April 23, 1945.

4. "¼th of all the royalty" conveyed by Continental to A. R. McElreath and F. W. Suggett on January 26, 1943.

No mention is made in such deed as to the amount of royalty being conveyed to C. Doornbos.

Plaintiffs are the successors in title of C. Doornbos, their father. The successors to McElreath and Suggett were made parties defendants, and at the conclusion of plaintiffs' evidence, an instructed verdict was rendered for these defendants and no appeal has been taken from the judgment in their favor. This judgment decreed that such successors to McElreath and Suggett recover a full ¼th of all royalty whether the royalty was ⅛th or in excess of ⅛th.

Plaintiffs alleged that it was agreed and intended by both the defendant and C. Doornbos that C. Doornbos would receive all royalty in excess of ⅛th of production and that by mutual mistake this provision had not been included in the deed. It was prayed that such deed be reformed to include this provision. There was no pleading nor proof that fraud was involved in any way in this transaction.

The jury found: that defendant agreed to sell and convey and intended to sell and convey to C. Doornbos all royalty over ⅛th; that C. Doornbos agreed to purchase and acquire, and intended to purchase and acquire from defendant, all royalty over ⅛th; that defendant believed its deed effectively conveyed all royalty over ⅛th to C. Doornbos; that C. Doornbos believed such deed effectively conveyed to him all royalty over ⅛th; and, that omission of such language from the deed to convey such royalty interest was the result of a mutual mistake of the defendant and C. Doornbos. Judgment was rendered reforming such deed so that C. Doornbos received all royalties in excess of ⅛th and further decreed that to the extent the language of the royalty reservation in the deed from Continental Oil Company to Doornbos "is or may be in conflict with and repugnant to the grant to C. Doornbos of all royalty over and above and in excess of one-eighth (⅛th) royalty in accordance with said deed as same is reformed and amended by this decree, said reservation in-

sofar as it does or may conflict with the grant of all royalty over one-eighth ($\frac{1}{8}$th) royalty to C. Doornbos is wholly void and of no effect to the extent of such conflict."

■ Defendant contends that there is no evidence to support these findings of the jury hereinbefore set forth and that the trial court erred in decreeing reformation of the deed. These are questions of law to be determined by this court by considering only the evidence favorable to such findings and disregarding all other.

■ The evidence in this case shows clearly that both C. Doornbos and defendant were of the opinion that the deed by defendant to McElreath and Suggett describing the interest as $\frac{1}{4}$th of the royalty, conveyed a $\frac{1}{32}$nd royalty. All of their negotiations were based upon the premise that there would be outstanding at the time of the conveyance to C. Doornbos, a $\frac{1}{8}$th royalty interest, including the $\frac{1}{32}$nd reserved by defendant. The evidence shows that Mr. B. F. Mayer told C. Doornbos and William Doornbos, during the course of negotiations to sell the land, that the purchase of the land would include all royalty in excess of one-eighth. A letter from Mr. Mayer dated February 7, 1945, was accepted in evidence and read as follows:

> "Houston 2, Texas
> February 7, 1945
>
> Mr. C. Doornbos
> Nederland, Texas
>
> Dear Mr. Doornbos:
>
> Before I submit your offer of $40,000 for the property near Port Arthur, with our company to reserve a $\frac{1}{32}$nd royalty, there is one thing that I wish to be sure you understand. There had been sold $\frac{3}{4}$ths of $\frac{1}{8}$th royalty. If we reserved a $\frac{1}{32}$nd, which is $\frac{1}{4}$th of $\frac{1}{8}$th, there would then be no royalty conveyed with the property if we sold it. You would, however, own all the minerals which would give you the leasing rights. If you executed a mineral lease you would have to provide for more than a $\frac{1}{8}$th royalty so that any royalty over and above the $\frac{1}{8}$th would be yours. This has been done in numerous instances by landowners.
>
> With the above in mind, if you are willing to pay $40,000, I will submit it at once, and I feel reasonably sure the management will be inclined to accept your offer.
>
> Yours very truly,
> B. F. Mayer
> General Land and Title Man
> Land Department
> Southern Region"

Also admitted in evidence was another letter from Mr. Mayer to C. Doornbos dated February 15, 1945, a portion of which read as follows:

> "With reference to my letter of February 7th and our recent conversation here in the Houston office, the matter of selling the property near Port Arthur to you has been taken up with our officials and they are willing to accept your offer of $35,000 for the land, with our retaining a $\frac{1}{4}$th of $\frac{1}{8}$th, or a $\frac{1}{32}$nd royalty interest, which would make at the time the sale is consummated $\frac{1}{8}$th royalty outstanding against the property."

The date of the deed from defendant to C. Doornbos was April 23, 1945. The evidence further shows that both C. Doornbos, until the date of his death July 12, 1954, and the defendant, until 1959, treated this deed as a conveyance of all royalty in excess of $\frac{1}{8}$th. Even though there is no direct evidence that either the defendant or C. Doornbos intended to incorporate a provision in the deed that C. Doornbos should receive all royalty in excess of $\frac{1}{8}$th, it is apparent that both parties not only intended that C. Doornbos receive such interest, but also thought this was the legal effect of such conveyance. Under these circumstances, that is, a mutual mistake as to the legal effect of words used

in a conveyance, the remedy of reformation is available in order to carry out the intention of the parties. Miles v. Martin, 159 Tex. 336, 347, 321 S.W.2d 62.

 Once we arrive at the true intentions of the parties, we find a conflict in the conveyance. As above stated, even though it is clear that the defendant and C. Doornbos intended that C. Doornbos receive all royalty in excess of ⅛th, it is equally clear that defendant and C. Doornbos intended that defendant retain a ¹⁄₃₂nd royalty interest. The trial court correctly resolved this conflict in its judgment by holding that the deed be reformed to grant C. Doornbos all royalty in excess of ⅛th and that the reservation by defendant was void to the extent of any conflict. A grantor in a warranty deed is estopped to claim title to an interest reserved therein, when to permit him to do so would, in effect, breach his warranty with respect to the title and interest which the deed purports to convey. Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W. 2d 878; Miles v. Martin, supra. The evidence, together with all reasonable inferences therefrom, supported the findings of the jury and the judgment of the court.

 Defendant also contends the answers of the jury to such special issues were against the overwhelming preponderance of the credible evidence. We have considered the entire record in passing upon these points and we do not find such answers to be clearly wrong or manifestly unjust. The points are overruled.

A series of issues were submitted to the jury asking whether C. Doornbos or the plaintiffs did not discover the mistake inquired about, and also whether there was not want of reasonable diligence on the part of C. Doornbos or the plaintiffs in failing to discover the mistake inquired about before September 1, 1956, this date being four years before the amended petition was filed alleging mutual mistake and seeking reformation. It is agreed by the parties that a suit brought to correct a mistake in a deed is governed by

Art. 5529, Vernon's Ann.Civ.St., and that suit must be brought within four years. It is also agreed that such a cause of action accrues at the time the mistake is discovered, or when the mistake should have been discovered, by the exercise of reasonable diligence. The jury found favorably to plaintiffs on all of these issues and defendant contends these findings of the jury are without support in the evidence.

The evidence shows that defendant believed the McElreath and Suggett reservation was a ¹⁄₃₂nd until about February or March, 1959. December 17, 1957, an attorney for plaintiffs wrote the defendant a letter containing the following:

"My attention has been called to a possible interpretation of your royalty deed to McElreath and F. W. Suggett as conveying ¼ of a ⅙ royalty provided in a lease by the Trustees under the will of C. Doornbos, deceased, which would be a ¹⁄₂₄th instead of a ¹⁄₃₂nd royalty. Your letters to Mr. Doornbos of February 7, 15 and 22, 1945, just prior to your deed to him, indicate that your deed to McElreath and Suggett was intended to convey only a ¹⁄₃₂nd royalty. Photocopies of your three letters to Mr. Doornbos are enclosed.

"The trustees under his will, who are his three sons, desire a recordable agreement that the royalty of McElreath, Suggett, Brown and Wheller, together, is a ¹⁄₃₂nd and not ¼ of such royalty as may be provided in any mineral lease made by them. In view of your letters to Mr. Doornbos, your files should contain information or correspondence which certainly should remove any doubt that such royalty is a ¹⁄₃₂nd and not ¼ of ⅙ or any other amount of royalty."

Defendant's reply dated January 31, 1958, was as follows:

"In regard to your letter of December 17, 1957, we submitted the Royalty Deed from Continental to A. R. McElreath

and F. W. Suggett to our Legal Department for their opinion.

"They have advised us that the above-mentioned Royalty Deed clearly conveyed a $\frac{1}{32}$ interest ($\frac{1}{4}$ of $\frac{1}{8}$ of $\frac{5}{8}$) in the oil and gas which might be produced from the lands covered thereby. They further advise that no corrective instrument is considered necessary at this time."

The first indication that the defendant placed any other interpretation upon the interest held under the McElreath and Suggett reservation was set out in its letter to plaintiffs' attorney dated March 4, 1959.

■ It is argued by defendant that C. Doornbos had examined the deed and had his attorney examine the deed, and further that C. Doornbos had an abstract furnished to him showing all of the instruments in his title. It is contended that there is no evidence in the record that C. Doornbos did not know of the omission of language in the deed conveying him all royalty in excess of $\frac{1}{8}$th. It was not the discovery of the failure to include this language in the deed which would have started the statute of limitation running in this case. It was the discovery that the legal effect of the deed as written did not convey such interest, that would have started the statute of limitation running. There is no evidence in this record that C. Doornbos, the plaintiffs or the defendant had any suspicion that the legal effect of the deed was contrary to the mutual mistake found by the jury, at any time before September 1, 1956. The statute of limitation did not begin to run in this case until either the mistake as to the legal effect of the words used was discovered or, in the exercise of reasonable diligence, should have been discovered. Miles v. Martin, supra. Questions of fact were presented in this case, and found by the jury in favor of plaintiffs. The evidence supported these findings of the jury.

■ Defendant also contends such findings were supported by insufficient evidence

and that such findings were contrary to the great weight and preponderance of the evidence. From an examination of all of the evidence upon these points, we do not find such answers to be manifestly unjust or clearly wrong. Such points are overruled.

■ Defendant has three points of error as to admission of certain evidence. There statements were admitted in evidence, all of the general import that there was a $\frac{1}{8}$th royalty outstanding on this tract. The first, in the handwriting of C. Doornbos, was written across the face of a ledger sheet and a witness testified the entries were made in the usual course of business. The second was an entry on a ledger sheet, and a witness testified it was made by the bookkeeper. The third was a sheet of paper with entries made by C. Doornbos, setting forth the outstanding royalties on this tract. It is apparent that these statements were not offered to prove the truth of the matters therein stated, that is, that there was an outstanding $\frac{1}{8}$th royalty interest, but solely for the purpose of showing the state of mind of the person making the statement. Even though there might be some question as to whether these statements could qualify as exceptions to the "Hearsay Rule" in view of the great amount of evidence on this same point, this could not be harmful error. Rule 434, Texas Rules of Civil Procedure.

■ There are also a group of points complaining of the action of the trial court in admitting in evidence certain correspondence and memorandums written by defendant's employees. All of these were dated after the date of the deed. The same rules of law would apply to these offerings as set forth in the preceding paragraph. These points are overruled.

This court has carefully read and considered all fifty-four points contained in defendant's brief. All points are overruled.

Judgment affirmed.

PARKER, J., not sitting.